The opinion of the court was delivered by
the Chief Justice.
By an ordinance of the city of Paterson, it was ordained that a section of Mill street, in that city, should be graded, *393 tbe gutters paved, and the side walks curbed and gravelled. Under the provisions of the ordinance, the grading and paving were done by the city, and the amount assessed ratably on the several lots fronting on the street. The curbing and gravelling of the side walks was required to be done by the owners of the lots in front of their respective premises. The defendants were the owners of seventy-three lots fronting on the street where the improvements were made. Pursuant to the provisions of the ordinance, the street was graded and paved by the city; and the expenses having been paid out of the city treasury, a proportionate share thereof, amounting to $535.11, was assessed upon the defendants, as the owners of the lots.
The defendants having failed to curb and gravel the side walks in front of their lots, in compliance with the requirements of the ordinance, that work was also performed by the city, at an expense of $452.50, and the amount paid out of the city treasury. To recover the moneys thus paid by the city, this action is brought.
No formal exception is taken to the proceedings of the city authorities. It is not questioned that the work was done and the assessment made in compliance with the provisions of the charter and of the city ordinances. The only questions discussed upon the argument axe those involving the substantial rights of the parties.
1. The first ground relied upon in defence is, that the charter of the city is null and void.
A void charter can legalize no act done under it. The better opinion therefore is, that where it is alleged not that the charter is forfeited, but that it is null and void, that fact may be inquired into collaterally and incidentally. Ang. & Ames on Corp. (4th ed.) § 778.
The city of Paterson was incorporated by an act of the legislature, passed on the 19th of March, 1851. The district incorporated was identical with the limits of the township of Paterson. The act of incorporation contains a provision that it should not go into effect unless the assent of a majority of the electors of the township of Paterson should be first ob *394 tained. There is a further provision, that if the charter should not be accepted at the first election, it should be lawful for the township committee to submit the act to the voters of the township at a special town meeting, to be called for that purpose, for their assent or refusal, whenever and so often (not exceeding once in each year) as the township committee might deem proper; and whenever a majority of the persons voting at such town meeting should be found in favor of the act, it should go into operation.
The objectionable character of this last provision is obvious. Of its legal effect it will be unnecessary to express an opinion, inasmuch as no action was had under it. The charter was in fact accepted at the first election provided for in the act, a majority of the voters being then found to be in its favor. The only inquiry will be, whether the provision of the act, that it shall not go into effect until the assent of the electors within the incorporated district be first obtained, renders the act unconstitutional and void.
Whether a statute is rendered unconstitutional by the fact that its operation is made to depend upon the will of the people, expressed through the ballot box, is a question which has recently given rise to much discussion and to a decided diversity of judicial opinion.
In 1845, the question came before the Court of Appeals of the state of Delaware, upon a law of that state authorizing the people to decide by ballot whether the license to retail intoxicating liquors should be permitted among them. After a very elaborate argument, and upon a thorough examination of the principles involved, the court unanimously pronounced the law unconstitutional and void.
A similar law of the state of Pennsylvania was pronounced unconstitutional by the Supreme Court of that state, in Parker v. Commonwealth, 6 Barr. 507. In the latter case, two of the five judges composing the bench dissented, and united in an opinion sustaining the validity of the law. 7 Penn. Law Journal 215.
The statute of the state of New York, (of the 26th of March, 1849,) establishing free schools, contained a similar *395 clause, submitting the question of its operation to a popular vote, which ratified the act. The statute was pronounced constitutional by the Supreme Court of that state, sitting in the seventh judicial district, one of the three judges dissenting. Cole v. Stevens, 9 Barbour 676.
The same law was subsequently pronounced unconstitutional and void by the unanimous opinion of the Supreme Court, sitting in the fifth judicial district, and a similar decision is there stated to have been rendered by the Supreme Court, sitting in the third district. Bradley v. Baxter, 1 Am. Law Reg. 658.
Much as the authorities differ in their conclusions, they all concur in the great principles by which the question is to be settled. It is conceded as indisputable—
1. That as well by the fundamental theory of a representative democracy as by the express provision of the constitutions of the states of the Union, legislation cannot be exercised directly by the people.
2. That the legislative power cannot be delegated; that it can be exercised only by the functionaries and in the mode designated and prescribed in the constitution.
3. That a law enacted by any other authority, or in any other mode than that prescribed by the constitution, is void.
The only ground of diversity is upon the simple point, whether submitting the question of the expediency of a law to the test of a popular election be in fact a delegation of the legislative functions. It is insisted that where the operation of the law is made to depend upon a popular vote upon the expediency of the enactment itself, the vote by the people is virtually an act of legislation, and that the law derives its vitality not from the will of the legislature, but from a source not recognised by the constitution.
From this statement of the principle involved, it is apparent that the present case does not at all come within its operation. Had the question been submitted to the people of the state, or of the county of Passaic, whether it was expedient for the legislature to grant a city charter to the township of Paterson, and the operation of the law had been made to depend upon *396 the result of that election, the constitutional difficulty would have been fairly presented. But the question that arises upon this statute is simply whether a charter granted by the legislature to a municipal corporation may constitutionally be submitted to the corporators for their acceptance before it goes into operation, and whether its going into effect may be made to depend upon their acceptance or rejection.
The question submitted by the.act to the inhabitants of the district was submitted to them not as a part of the sovereign people, but simply as corporators. Nor was the question upon the expediency of thé statute or of any particular provision of the charter, but- simply whether they would accept the charter tendered to them by the legislature. Their vote was an act of acceptance, not of legislation. The Supreme Court of Pennsylvania held that the erection of a municipal corporation does not fall within the principle decided in Parker v. Commonwealth. They declare that “the erection of a township, or the creation of a new district for merely municipal purposes or convenience in the transaction of business, is in no degree similar to the exercise of the law making power.” County v. Quarter Sessions, 8 Barr. 395; Commonwealth v. Painter, 10 Barr. 214.
Under the British constitution, charters are usually granted by the crown, in the exercise of its prerogative. It is essential to their validity that they be accepted by the corporators; but it was never imagined that the act of acceptance was an ex-ercisemf the royal prerogative : no more is an act of acceptance of a charter granted by the legislature an act of legislation.
Government cannot enforce the acceptance of a private charter upon a corporation without consent, for no corporator can be subject to the inconvenience of it without accepting of and assenting to it. Rex v. Vice Chancellor, 3 Burr. 1661; King v. Passmore, 3 Term Rep. 240; Ang. & Ames on Corp. (4th ed.) § 81, 33; Bailey v. The Mayor, &c., 3 Hill 543.
And, under the constitution of the United States, no change *397 can be made in a private charter without the consent of the corporation. Ang. & Ames, § 767.
In regard to public or municipal corporations, sound principle requires that they should not be forced upon the corpora-tors against their consent. Such is the well settled principle in England in regard to all municipal corporations created by the crown. Though the king has the power to create corporations, he cannot impose them on his subjects without their consent. Whether it be an original act of incorporation, or a charter by which the franchises of a preexisting corporation is altered, it must be accepted by a majority of those to whom it is granted. King v. Amory, 1 Term Rep. 572; Willcock on Corp. 30.
It is not denied that a municipal corporation may be, either by the legislature or by the British parliament, by virtue of the plentitude of its power, imposed upon the corporators without their consent. It doubtless may be done. Willcock on Corp. 25.
But it would be alike against the genius of our government and the spirit of the British constitution. It would be, in the nervous language of Lord Thurlow, an atrocious violation of principle, which would cut every Englishman to the bone. Almost invariably in practice municipal charters have been granted or altered by our legislature, in accordance with the expressed will of the corporators. The exceptions are very rare. They have occurred in seasons of high excitement; they cannot be reconciled to sound principle. They are to be regarded as beacons to be shunned, not as precedents to be followed.
Before imposing the burthens of a city charter upon a people, the legislature not only may, but ought to require the assent of the corporators. It is designed as a benefit, but it brings heavy burthens, which ought not to be imposed upon a people without their assent. The only question then is, must the consent be obtained prior to the passage of the law, or may the charter be granted and submitted to the corporators for their acceptance.
In the case of a private charter, it was conceded upon the *398 argument that the act of incorporation might be made to depend upon the assent of the corporation subsequently given. But the acceptance of a charter by the vote of a municipal corporation is no more an act of legislation than the acceptance of a charter by the votes of the members of a private corporation. If in the one case the operation of the act may be made to depend upon the vote of the corporation, it may with equal propriety in the other.
The charters of many municipal corporations contain a similar clause. It will be found in the charter of the city of Newark (passed February 29th, 1836,) and in the charter of the city of Trenton (passed March 7th, 1837,). The act further to amend the charter of the city of New York, passed April 12th, 1853, contains a similar provision. This act is particularly worthy of notice, as it was passed almost contemporaneously with the decision of their Supreme Court, that a similar provision in the school law rendered the act unconstitutional. Almost immediately after that decision the amended charter was submitted to the vote of the electors of the city of New York, and was accepted.
The retrocession of the county of Alexandria, in the District of Columbia, to the state of Virginia, made by .act of congress of July 9th, 1846, submitted the question of retro- . cession to a vote of the qualified electors of the county. The act was to take effect only with their consent.
A provision similar in principle is embraced in the charter of incorporation of the defendants. The district selected as the principal seat of their intended establishment was, with the assent of the inhabitants, expressed in the words designated in the charter of the society incorporated under the title of “the Corporation of the town of Paterson.” The defendants maintain that this municipal corporation still subsists. The validity of the charter has never been questioned, and yet, if the position assumed by the defendants to invalidate the charter of the city be tenable, the original charter of the town of Paterson is necessarily void. At the date of the society’s charter, it was not usual to refer the acceptance of a municipal charter to a vote of the corporators. The charter *399 was usually granted on the application of the corporators. But the charter of the society being granted at the instance of private individuals, the municipal incorporation included in the charter was made to depend upon the express assent of the corporators.
The second objection is, that the charter of the city of Paterson creates a new municipal corporation within the limits of the corporation created by the charter of the Society for Establishing Useful Manufactures. The objection is two fold, viz. 1. That it is a violation of the charter of the society, having been done without their consent. And 2. That it creates two municipal corporations within the same territory having similar powers and privileges. Neither objection is tenable. The charter of the corporation of the town of Paterson, though granted by the same act that incorporates the society, creates essentially a distinct corporation. The one is a private, the other a municipal corporation. The corporators of the one are the subscribers to the stock for manufacturing purposes, of the other the inhabitants of the incorporated district. It was no doubt supposed that the municipal corporation would promote the objects of the society. But the municipal corporation being created, its members are vested with all the rights and privileges of other public corporators, without being in any wise subject to the control of the incorporated society. This principle would apply if the members of the society had themselves been created a municipal corporation. In dealing with chartered rights, regard is always had rather to the character of the rights granted than to the nature of the corporation. A municipal corporation, exercising powers conferred not for public purposes but for their private benefit and emolument, will be regarded quod hsec as a private company. And the converse of the principle is equally true. Bently v. The Mayor of New York, 3 Hill 531.
It is certainly true that there cannot be at the same time two municipal corporations in the same place, exercising the same or similar powers, jurisdictions, and privileges. Willcock on Corp. 27.
But the legislature, not being restricted in this particular by *400 the charter of the society, had the undoubted right to alter the limits of the old corporation, to alter its franchises, or to create a new corporation. ■ So far as the two charters may conflict, the latter is a repeal of the former. Having been done with the expressed assent of the inhabitants of the incorporated district, there appears to be no valid objection either to the legality or justice of the act of the legislature in granting the city charter.
The third and last objection is, that the lands of the society are exempt from taxation by the express terms of their charter. The “ taxes, charges, and impositions” specified in the charter are manifestly those imposed for public use. The design of the charter was to relieve the corporation from such burthens only. But (to adopt the language of the Supreme Court of New York) “to pay for the opening of a street in a ratio to the benefit or advantage derived from it is no burthen; it is no talliage or tax within the meaning of the exemption, and has no claim on the public benevolence.” Matter of the Mayor of New York, 11 J. R. 80.
On both claims let judgment be entered for the plaintiff.