## MILK ET UX. *v.* KENT.

JURISDICTION.—*Formation of New County.*—*Action in Court of Old County Concerning Land in New.*—*Statute Construed.*—*Presumption.*—Subsequent to the establishment of the boundaries, the location of the county-seat, and the qualification of the officers of a new county, formed from another county, under the provisions of the supplemental act of March 5th, 1859, 1 G. & H., p. 193, but prior to the fixing of the time for holding the first term of the circuit court in the new county, as provided in section 10 of such act, an action was commenced in the circuit court of the old county, concerning the title to certain real estate lying within the new county; and, subsequent to the holding of such first term, judgment was rendered therein, decreeing such title to be in a certain party to such action.

*Held,* on a special finding of the foregoing facts, made in a subsequent action concerning the same real estate, between persons claiming under the parties in the original action, that the circuit court of the old county had jurisdiction over such real estate, enabling it to render a valid decree.

*Held,* also, that such statute should be so construed as to enable a suitor, at all times, to bring an action to enforce a right or redress a wrong.

*Held,* also, that, where a doubt exists as to jurisdiction, the presumption should favor the record.

*Held,* also, that, on the establishment of the boundaries of the new county, it became, under the last clause of section 1 of such act, simply a political organization entitled to rights pertaining to similar organizations.

From the Newton Circuit Court.

*J. E. McDonald, J. M. Butler, F. B. McDonald, G. C. Butler, B Harrison, C. C. Hines* and *W. H. H. Miller,* for appellants.

*R. S. Dwiggins* and *Z. Dwiggins,* for appellee.

WORDEN, J.—This was an action by the appellee, against the appellants, Milk and wife, to quiet the plaintiff's title to a section of land.

Other parties were made defendants, as to whom no question arises.

Milk answered by general denial, and also filed a counter-claim, setting up title in himself to the land, and praying that his title be quieted, as against the plaintiff.

The cause was tried by the court, who found the facts specially, and concluded, as matter of law arising upon them, that neither of the parties owned the land, and rendered judgment in favor of Milk, for costs.

Milk excepted to the conclusions of law.

The following is the finding of the court:

" Upon the issues in this cause, made between the plaintiff and the defendants, Lemuel Milk and Jane A. Milk, the court, having been thereunto requested by the defendants, makes the following special finding of facts:

" The land in controversy, section 23, township 30 north, of range 8 west, in Newton county, Indiana, was, on the 20th day of May, 1859, conveyed, as 'swamp land,' by the State of Indiana, by sixteen patents, each for 40 acres, to Robert L. Walpole.

" On the 6th day of April, 1864, said Walpole conveyed said land, by warranty deed, to Solomon Harness, which deed was duly recorded on the 9th day of June, 1864.

" On the 4th day of April, 1871, Levi Paddock obtained judgment in the Marion Superior Court, against said Harness and others, in the sum of $286\frac{60}{100}$ and costs. An execution issued on said judgment on the 24th day of April, 1871, and was directed to the sheriff of said Newton county. He levied it, May 1st, 1871, on section 23, township 31 north, of range 8 west, in said county, the same not being the land in suit; and, having duly advertised the land so levied upon, sold it at sheriff's sale, June 10th, 1871, to the plaintiff, Kent, for $527\frac{34}{100}$. Kent paid the sheriff that amount. The sheriff, after satisfying the Paddock execution, applied the residue to the payment of other executions in his hands against said Harness. On the 18th of April, 1874, the sheriff of Newton county

executed to the plaintiff a sheriff's deed for the land in controversy. This deed, in its recitals, purports to have been executed by virtue of the judgment, execution, levy, advertisement and sale aforesaid, but, in fact, without any levy, advertisement or sale of the land described. This deed was duly recorded April 21st, 1874.

"On February 6th, 1865, the land in dispute was sold by the proper officers, at tax sale, to Alfred Thompson, for $76\frac{16}{100}$, for the unpaid taxes of 1862, 1863 and 1864. For each of said years there was assessed to said land a road tax of one cent an acre, and which was embraced in the taxes for which the land was sold at said tax sale. On October 11th, 1870, said Thompson assigned his certificate of purchase to the plaintiff, Kent, to whom a tax deed was made by the county auditor on October 14th, 1870, and duly recorded the same day.

"At the commencement of this action, June 5th, 1874, the plaintiff had no title to the real estate in dispute, except such as he may have derived by said sheriff and tax deeds.

"In 1872, the plaintiff, claiming to be the owner of the land, under his tax deed, took possession, enclosed eight or ten acres by fence, built upon it a small dwelling-house, and has since remained in possession. During his possession he has used the land for grazing purposes.

"On the 3d day of June, 1857, before the issue of said patents to Walpole, the land was entered by E. B. Collins, but an injunction granted by the Marion Circuit Court prevented the issue of patents to him.

"Collins and wife conveyed the south half of the land to John Terrell on March 27th, 1857. The deed was recorded October 7th, 1857.

"On the 13th day of June, 1860, David B. Abbott, assignee of Erasmus B. Collins, commenced an action in the Jasper Circuit Court against Amzi B. Condit, Joseph Buckles, Robert L. Walpole and John W. Dodd, Auditor of State. He alleged in his complaint, that he was the

owner of the land now in dispute, and also other lands, but none of it in Jasper county after the formation of Newton county. As relief, he prayed the cancellation of the Walpole patents and the quieting of his title. At the September term, 1861, of the Jasper Circuit Court, the venue of the action was changed to the Tippecanoe Circuit Court. Walpole answered the complaint. His death was suggested at the April term, 1876. His heirs were made parties by motion and supplemental complaint. At the October term, 1867, the case was dismissed, but reinstated at the same term. At the October term, 1869, all of the defendants having been personally served with summons or notified by publication, some of them answering by guardian *ad litem* and the others defaulted, the cause was submitted to a jury for trial, who returned a verdict that Abbott was the owner in fee-simple of the land, and that the title should be vested in him. A decree was then rendered that the patents issued to Walpole should enure to Abbott's favor, the same as if issued to him, and quieting his title. A commissioner, appointed by the court, executed to him a conveyance, which was recorded December 3d, 1869.

"On September 8th, 1873, said Abbott and wife conveyed the lands, by quitclaim, to the defendant Leonard Milk. This deed was recorded October 9th, 1873. Abbott had no title except such as may have been vested in him by virtue of said decree. Milk has no title except such as he may have derived through the deed from Abbott.

"The conveyance made by Walpole to Harness, April 6th, 1864, was during the pendency of Abbott's action. Harness was not made a party to that action.

"Newton county, in which is located the land in dispute as well as the land described in Abbott's complaint in his said action, was formed from a part of Jasper county. A petition for its formation was presented to the county board of Jasper county at its December session, 1857. A committee of three was appointed to establish the boun-

daries. The committee did this February 27th, 1859, and so reported to the commissioners, December 9th, 1859. The report was recorded in the proceedings of the board, and on the 24th of the same month was approved, and an order made by the board establishing the boundaries of the new county as reported. All the officers of the new county, having been elected, commissioned and qualified, entered upon the discharge of their official duties on April 21st, 1860. The county board of the new county held its first session on the first Monday of June, 1860. On the 5th of that month the grand and petit juries were selected for the circuit court. The first deed was recorded in the new county May 3d, 1860. The first marriage-license issued on May 2d, 1860, and the first action was commenced in the circuit court on July 16th, 1860. The report of the commissioners to locate the county seat was recorded on June 8th, 1860, showing that the location was made on March 15th, 1860.

" On July 23d, 1860, the Hon. Charles H. Test, judge of the 12th Judicial Circuit, of which Jasper county at the time of the formation of Newton county, formed a part, made an order appointing a term of the circuit court to be held in the latter county on August 27th, 1860. This order was recorded by the clerk in the order book of the court July 30th, 1860, and published in the nearest newspaper, the same being at Rensselaer, in Jasper county. The first term of the circuit court of the new county was held on August 27th, 1860.

"As conclusions of law from the foregoing facts, the court finds:

" 1st. That the said sheriff's deed to Kent conveyed no title;

" 2d. That said tax deed made to him conveyed no title;

" 3d. That the Jasper Circuit Court, on June 13th, 1860, did not have jurisdiction to determine the title to the

real estate in controversy, and that the decree in said Abbott's action is a nullity;

"4th. That, at the commencement of this action, on June 5th, 1874, neither the plaintiff, Kent, nor the defendant Lemuel Milk, owned the land in suit, but that the same was owned by Solomon Harness; wherefore,

"5th. The court finds for the defendants, Lemuel Milk and Jane A. Milk, upon their general denial to the plaintiff's complaint, that they should have judgment for their costs."

It is claimed by counsel for the appellants, that the court erred in its third conclusion, that the Jasper Circuit Court had not jurisdiction, on June 13th, 1860, to determine the title to the land in controversy, and therefore erred in the fourth conclusion, in so far as it finds that Milk had no title. It is conceded by the counsel for the appellee, that, if the Jasper Circuit Court had such jurisdiction on the day mentioned, the judgment below was wrong. This is the only point made in the case, and we proceed to consider it.

Actions for the recovery of real estate, or of any interest therein, or for the determination in any form of such right or interest, are local, and must be brought in the county where the same or some part thereof is situated. 2 R. S. 1876, p. 44, sec. 28.

The land in question, now in Newton county, was originally in Jasper; and the question arises, whether, on the facts stated in the finding, Newton county was organized for judicial purposes on June 13th, 1860. The division of a county is not complete until a court in the new county is so far organized as to enable suits to be commenced in the new county. *Buckinghouse* v. *Gregg*, 19 Ind. 401.

The statutes relating to the subject should be so construed, if possible, as that a suitor may at all times be able to bring an action either in the old or in the new county, to enforce a right or redress a wrong.

The last clause or part of the 1st section of the act to

authorize the formation of new counties, 1 G. & H., p. 191, provides, that "from the time said boundaries are established, said new county shall be, to all intents and purposes, an organized county, with all the rights and privileges that under the law appertain to organized counties." But the establishment of the boundaries is the first, or nearly the first, step to be taken in the process of the organization of a new county. After that the county-seat is to be established and the county offices to be filled. When the boundaries are established merely, there is no place provided by law for holding courts, and no clerk or sheriff. It is clear, that, when nothing more has been done than the establishment of the boundaries of a new county, no action could be brought therein in a circuit court. We must construe the clause of the statute above set out as relating to the rights of the new county as an organized political body, and not as affecting the question of jurisdiction of courts. The jurisdiction of Jasper county over the subject of the action continued, therefore, after the boundaries of the new county had been established.

The new county continued in the same judicial circuit as the county from which it was taken; and, if the circuit court of Jasper county had jurisdiction over the subject of the action at the time it was commenced, that jurisdiction continued, notwithstanding the organization of the new county. 1 G. & H., p. 194, secs. 8, 9.

Section 10 of the statute last above cited provides, that "the circuit court shall be holden in such new county at such times as the presiding judge, in whose circuit the said new county may be, shall appoint; and said judge shall have full power and authority to make all necessary orders in relation thereto."

Now, there must have been some time, or rather, there must have occurred some event or events, upon the happening of which the jurisdiction of the Jasper Circuit Court, over actions concerning real estate situate in the new

county of Newton, passed from the court of the former to that of the latter county.

The jurisdiction did not necessarily pass from the court of Jasper to that of Newton county, when the county officers of the latter county had been elected, and had qualified. A judge, sheriff and clerk do not necessarily constitute a court; nor can a court, unless it be one that has no stated terms, like that of a justice of the peace, be fairly said to be organized for business until some time has been fixed by law, or by the authority of law, for the holding of its terms.

The circuit court is a court holding stated terms at periods fixed by law, or by authority of law ; and proceedings had as a court at any other time are void. *McCool* v. *The State*, 7 Ind. 378.

We are of opinion, that the circuit court of Newton county was not fully organized for business until the time was fixed by the judge for the holding of its first term, and that until that time the jurisdiction of the Jasper Circuit Court over actions in relation to real estate situate in the new county, was not divested.

The time was not thus fixed until after the commencement of the action in the Jasper Circuit Court. Whatever doubt there may be, ought to be thrown in support of the record rather than against it. The conclusion we have adopted we deem the most reasonable one. We have seen that upon the transpiration of some event or events, the jurisdiction of the court of Jasper county ceased. The difficulty has been to determine just what those events were.

It seems to us most reasonable to hold that the appointing of a time for holding the court in the new county was the final event that divested the court of Jasper county of jurisdiction of actions concerning lands in the new county.

A party suing in the Newton Circuit Court before the time had been appointed by the judge for holding the

term would not know when to prepare his action for trial, or when to procure the attendance of his witnesses by subpœna or otherwise; nor would his witnesses, if subpœnaed, know when to attend. A defendant would not know when to appear and defend the action.

A summons, to be sure, need not notify the defendant when the next term of the court, at which he is required to appear, is to be holden. The law usually determines that, and he must take notice of it. But, where the time has not been fixed by the law, or any authority under the law, how can a party know when he is to appear and defend the action? The summons notifies him to appear at the next term of the court, to be holden at some future undetermined period of time, whenever it might be. Can he be thus compelled, at his peril, to watch and inquire for the appointed time? If the time is appointed when the summons is served upon him, he can ascertain it with little difficulty; but, if he has to enquire from time to time for an appointment to be afterward made, he may be subjected to much difficulty and inconvenience.

These considerations have had some influence in leading us to adopt the conclusion that the appointing of the time for holding the court in Newton county was the final act in the series that divested the circuit court of Jasper county of jurisdiction of actions concerning lands in the new county.

We are of opinion, therefore, that the court below erred in its conclusions of law upon this point.

The judgment below is reversed, with costs, as to the appellants, Milk and wife, and the cause remanded, with instructions to render judgment in favor of Milk, on his counter-claim.

Petition for a rehearing overruled.