ELMER G. STORY, Respondent, *v.* CHARLES L. CRAIG, as Comptroller of the City of New York, et al., Appellants.

Civil service — classification — enumeration in a schedule not a condition precedent to appointment — failure of appointing power to incorporate titles of positions in schedule no ground for ouster of employees.

1. Classification in the civil service has two meanings, one primary and the other secondary. The primary meaning is that indicated in the Civil Service Law (Cons. Laws, ch. 7) and imports a division of offices and employments into those where competitive examination is necessary or practicable and those where it is not. The secondary meaning is the mere arrangement or enumeration in a schedule of the title of positions whose quality, as competitive or the opposite, has already been determined.

2. Classification having been effected in the only sense essential to determine merit and fitness by competitive examination, and in the only sense that would be necessary if the positions were in the state service rather than in the service of the city, the rules of the local commission do not make a condition precedent of something which in its nature is a mere dictate of convenience or a mere requirement of form. Doubt, however, if it might otherwise exist, is dispelled by a practical construction that is continuous and uniform. *Held*, accordingly, that an assistant chief examiner and a first assistant chief examiner in the city of New York did not forfeit their positions, to which they had been appointed after competitive examinations, because the titles of the positions were not included in the schedule.

*Story* v. *Craig*, 191 App. Div. 914, reversed.

(Argued February 2, 1921; decided April 19, 1921.)

APPEAL, by permission, from a judgment of the Appellate Division of the Supreme Court in the second judicial department, entered March 16, 1920, affirming a judgment in favor of plaintiff entered upon a decision of the court on trial at Special Term.

*John P. O'Brien*, Corporation Counsel (*John F. O'Brien*, *William A. Walling* and *Arthur Sweeny* of counsel), for appellants. Even in the absence of formal classification

3

by the civil service commission, the position of assistant chief examiner was created and duly existed pursuant to section 123 of the charter and was deemed to be in the competitive class. (L. 1899, ch. 370, § 13; L. 1911, ch. 547; *People ex rel. Boyd* v. *Hertle*, 46 App. Div. 505; *People ex rel. Langdon* v. *Dalton*, 49 App. Div. 71; 163 N. Y. 556; *People ex rel. Martin* v. *Scully*, 56 App. Div. 302.) The mere absence of official classification by the commission of a position legally existing and classified by statute does not prevent an appointment to such position. (L. 1899, ch. 370, § 13; L. 1911, ch. 547; *People ex rel. Boyd* v. *Hertle*, 46 App. Div. 505.) For many years, by practical construction, the positions of first assistant chief examiner and assistant chief examiner have been recognized as independent positions or titles. (*People ex rel. Snyder* v. *Hylan*, 212 N. Y. 236; *Matter of Becker* v. *Boyle*, 179 App. Div. 789; 221 N. Y. 681; *Wintersteen* v. *City of New York*, 220 N. Y. 57; *People ex rel. Werner* v. *Prendergast*, 206 N. Y. 405; *People ex rel. Sears* v. *Tobey*, 153 N. Y. 381.)

*Frank Gallagher* and *Howard A. Sperry* for respondent. The classification controls, and, since the positions of first assistant chief examiner and assistant chief examiner were not placed in that classification until December 7, 1917, a long time after defendants' appointments to these positions, their examinations and appointments were irregular, illegal and void. They were *de facto* incumbents of those positions. (*People ex rel. Chittenden* v. *Wurster*, 152 N. Y. 345; *People ex rel. Schau* v. *McWilliams*, 185 N. Y. 92; *People ex rel. Terry* v. *Kellar*, 158 N. Y. 187; *People ex rel. Simons* v. *McGuire*, 204 N. Y. 253; *People ex rel. Fowler* v. *Moskowitz*, 175 App. Div. 710; *People ex rel. Leet* v. *Kellar*, 157 N. Y. 98; *People ex rel. Steves* v. *Kraft*, 135 N. Y. Supp. 1136; 151 App. Div. 913.) If the examination and appointment of the incumbent of the position of first assistant chief examiner as assistant

chief examiner was not regular in form and not in accordance with every requirement of the letter of the law essential to its validity, his subsequent appointment as first assistant chief examiner, accomplished as it must have been upon the presumption that he held the position of assistant chief examiner lawfully, was not regular in form, and was not in accordance with every requirement of the letter of the law essential to its validity. (*People ex rel. Fowler* v. *Moskowitz*, 175 App. Div. 710.) If the appointment of these incumbents to the positions of first assistant chief examiner and assistant chief examiner respectively were not regular in form and not in compliance with every requirement of the letter of the law essential to their validity, then they have no legal tenure, and the municipal civil service commission cannot certify their payrolls, and the comptroller cannot audit these payrolls and pay these incumbents the salaries appropriated for these positions by the board of estimate and the board of aldermen. (*People ex rel. Terry* v. *Kellar*, 158 N. Y. 187; *People ex rel. Chittenden* v. *Wurster*, 152 N. Y. 345; *People ex rel. Fowler* v. *Moskowitz*, 175 App. Div. 710.)

CARDOZO, J. The plaintiff, a taxpayer, complains that positions in the civil service have been illegally filled, and that the incumbents, being there without title, are paid without right. The judgment under review upholds the complaint and adjudges the intrusion. Payment of salaries and certification of payrolls have accordingly been restrained as acts of threatened waste.

The charter of the city of New York (section 123) empowers the municipal civil service commission, within the limit of appropriations, to appoint a secretary, examiners, " and such other subordinates as may be necessary." In 1904 the commission, acting under the authority of that section, created a new position which was to be known as assistant chief examiner. Under section 56 of the charter, the board of aldermen, acting

upon the recommendation of the board of estimate and apportionment, approved the resolution of the commission, and fixed the salary to be paid. In 1909, with like approval, the number of the positions was increased. In 1913 there was established yet another position known as first assistant chief examiner. Resolutions of the board of aldermen upon proper recommendation prescribed in successive years the rate of compensation, and appropriated in successive years the necessary moneys. No attack is made upon the regularity of the proceedings in these preliminary stages. The existence of positions, with moneys adequate for payment, is undisputed and indisputable.

With the field of controversy thus narrowed, we reach the question to be determined. The rules of the municipal commission incorporate a schedule of titles, offices and positions arranged in grades and classes. When the new positions were created, the schedule included in its enumeration the positions of chief examiner and examiners. It did not speak of assistant chief examiners or first assistant chief, for such places did not then exist. The plaintiff insists that there could be no lawful examination and hence no lawful appointment until by amendment of the rules the titles of the new positions were included in the schedule. The commission held promotion examinations as vacancies occurred. It gave public notice of these examinations as prescribed by law and usage. It gave opportunity for promotion to all the examiners then in the service who desired to compete. No complaint is made that the tests were unfair, or the candidates unjustly rated. Mr. Murray, one of the defendants, an examiner since March, 1904, was promoted to be assistant chief examiner in July, 1909, the examination giving him first place on the eligible list, and he was again promoted, this time to be first assistant chief, in July, 1913. Miss Upshaw, another defendant, who became examiner in 1902, was promoted to be assistant chief in April, 1913. During all the years that followed until the plaintiff

launched his challenge, there was no suggestion, either by public officer or taxpayer, of irregularity or flaw. In the meanwhile, the schedule had been amended (December 7, 1917) so as to incorporate in its enumeration the titles of the new positions. Then, in September, 1918, there came the present action. Public servants who were promoted after competitive examination, and who have rendered years of service on the faith of such promotion, must be ousted, it is said, because the commission which created their positions, and examined and appointed them, failed before the examinations to incorporate their titles in the columns of a schedule.

We find nothing in rule or statute that constrains to such inequity. *People ex rel. Fowler* v. *Moskowitz* (220 N. Y. 669) leaves the question open. We held there that all examiners must be admitted to examinations without discrimination when there was to be an appointment of a chief. We did not attempt to determine whether past examinations had been so conducted as to affect the status or the tenure of those who claimed to be assistant chiefs. The answer to that question requires us to consider the function of classification in the administration of the civil service. Classification in that service will be found to have two meanings, one primary and the other secondary. The primary meaning is that indicated in the Civil Service Law (Consol. Laws, ch. 7), and imports a division of offices and employments into those where competitive examination is necessary or practicable, and those where it is not. There shall be " four classes, to be designated as the exempt class, the competitive class, the non-competitive class and, in cities, the labor class " (Civil Service Law, section 12). The requirement that there shall be classification in this sense is fundamental and substantial, since such division is the basis for the administration of the system (*People ex rel. Sims* v. *Collier*, 175 N. Y. 196, 200). The secondary meaning of classification is the mere arrangement or enumeration in a

schedule of the titles of positions whose quality, as competitive or the opposite, has already been determined. This requirement is a creature, not of the statute, but of local rules, and is formal and not substantial. No schedule so minute or definite exists under the rules of the state civil service commission (Rule VII, State Civil Service Rules). All that we find there is a statement of general groups and subdivisions, coupled with a provision that any position not designated shall be assigned to the group and subdivision most appropriate to its functions. The preparation, under the rules of this municipal commission, of a schedule more minute and definite is a regulation of convenience.

The plaintiff makes no complaint that there has been any failure on the part of the commission to give to these positions a place in one of the four statutory classes. The complaint, if made, would be untenable. The positions have been put by the commission in the competitive class, and so in practice they have been treated. They have been put there by the general statement of the rules (declaratory, indeed, of provisions of the statute, secs. 14, 16) that everything shall be in the competitive class unless expressly included elsewhere. Classification has thus been effected in the only sense prescribed by statute. Classification has been effected in the only sense essential to determine merit and fitness by competitive examination. Classification has been effected in the only sense that would be necessary if the positions were in the state service rather than in the service of the city. The only question then is whether the rules of the local commission have made a condition precedent of something which in its nature is a mere dictate of convenience or a mere requirement of form.

We think the imputation of such a purpose is forbidden by the rules themselves. They provide, following the direction of the statute, that the classified service shall be arranged in four general classes, which shall be known,

respectively, as the exempt, the competitive, the non-competitive, and the labor class (Rule IV, subd. 1). They then provide that " the positions in each of the aforesaid classes shall be those specifically designated, under the head of each, in the appended classification; except that all positions, whether now existing or hereafter created, of whatever functions, designations or compensation, *the titles of which are not so designated,* shall be deemed to be in the competitive class " (Rule IV, subd. 2). The closing words are significant. A classification is appended, but any position not mentioned in it is to be regarded as competitive. The implication is inevitable that the list is understood to be neither exhaustive nor exclusive. Omissions are expected. Their effect is weighed and determined. Directions how to deal with them are given so that confusion may be avoided if they shall afterwards develop. Enumeration in a schedule is not a condition precedent, which, unfulfilled, will defeat the title to office or position. It is a form to be recommended, a device to be preferred, in furtherance of method and order and simplicity and system.

We find nothing in other rules that is sufficient to neutralize the effect of a disclosure of purpose so direct and unequivocal. Rule VI, subdivision 6, and rule XV, subdivision 4, do not mean that examinations shall never be conducted at all unless the title of a position is designated in the schedule. They mean that when a title *is* designated, that shall be the title under which the examination shall proceed, unless for special reasons to be stated in the minutes. Whether candidates would be affected even then by an omission from the minutes of which they had no notice, we need not now consider. The suggestive thing for us is that the title, even when designated, may sometimes be abandoned, and that nowhere is designation indicated to be an indispensable condition.

Enumeration in the schedule, therefore, is rather a counsel than a command. The rules, taken as a whole,

point unerringly to that conclusion. Doubt, however, if it might otherwise exist, is dispelled by a practical construction that is continuous and uniform (*Grimmer* v. *Tenement House Dept.*, 205 N. Y. 549, 550; *Wintersteen* v. *City of New York*, 220 N. Y. 57; *City of New York* v. *N. Y. City Ry. Co.*, 193 N. Y. 543). The commission presumably knew its own rules, and understood them. Yet successive boards, year after year, examined and promoted applicants, and certified payrolls, without suggestion or suspicion that omission from the schedule had nullified their action. That would be significant though the positions now in controversy were the only ones affected. The significance is heightened when we learn that there are many others. The record states without contradiction that a host of officers and employees in all or nearly all the departments of the city government have been appointed and promoted to positions not enumerated in schedules. We do not readily overturn the settled practice of the years.

In reaching this conclusion, we are not forgetful of the public interests. They weigh heavily at all times in the solution of these problems. Public policy does, indeed, demand that there shall be compliance with whatever is of substance in statute and rule for the formation of the civil service. We shall not willingly ignore anything of such an order, anything that makes for efficiency or fairness. On the other hand, public policy forbids that members of the civil service, complying in good faith with the tests of competitive examination, shall hold their places by a tenure made unattractive and precarious by technicality and formalism.

The judgment of the Appellate Division and that of the Special Term should be reversed, and the complaint dismissed, with costs in all courts.

HISCOCK, Ch. J., HOGAN, POUND, McLAUGHLIN, CRANE and ANDREWS, JJ., concur.

Judgments reversed, etc.