In the Matter of JOSEPH A. LaROCCA, Respondent, against EDWARD J. FLYNN, as Secretary of State et al., Appellants, Impleaded with Others.

6

(Argued July 15, 1931; decided July 15, 1931.)

*John J. Bennett, Jr., Attorney-General (Henry Epstein* and *Amos D. Moscrip* of counsel), for Edward J. Flynn, appellant. The resolution of the New York city Board of Aldermen is in all respects a constitutional and valid enactment. (*Schieffelin* v. *Goldsmith,* 253 N. Y. 243; *People ex rel. Cotte* v. *Gilbert,* 226 N. Y. 103; *People ex rel. Henderson* v. *Supervisors,* 147 N. Y. 1; *People* v. *Budd,* 117 N. Y. 1; *People ex rel. City of Rochester* v. *Briggs,* 50 N. Y. 553; *Whitney* v. *California,* 274 U. S. 357; *Ogden* v. *Saunders,* 12 Wheat. 213.) There is here no unconstitutional delegation of legislative power. (*Matter of Gilbert Elevated R. R. Co.,* 70 N. Y. 361; *People* v. *Long Island R. R. Co.,* 134 N. Y. 506; *Citizens Savings Bank* v. *Town of Greenburgh,* 173 N. Y. 215; *Buttfield* v. *Shanahan,* 192 U. S. 470; *Cincinnati, etc., R. R. Co.* v. *Commissioners,* 1 Ohio St. 77; *People ex rel. Descher* v. *Session,* 222 N. Y. 387; *Barto* v. *Himrod,* 8 N. Y. 483; *People ex rel. Unger* v. *Kennedy,* 207 N. Y. 533; *Bank of Rome* v. *Village of Rome,* 18 N. Y. 38; *Clarke* v. *City of Rochester,* 28 N. Y. 605; *People* v. *Fire Assn.,* 92 N. Y. 311; *Matter of 34th St. R. R. Co.,* 102 N. Y. 343; *People ex rel. Wakeley* v. *McIntyre,* 154 N. Y. 628.) Long-continued practice will not be overlooked. (*People ex rel. Einsfeld* v. *Murray,* 149 N. Y. 367; *Muller* v. *Oregon,* 208 U. S. 412; *People ex rel. Snyder* v. *Hylan,* 212 N. Y. 236.)

*Arthur J. W. Hilly, Corporation Counsel (William E. C. Mayer* and *Charles Horowitz* of counsel), for John R. Voorhis et al., appellants. The resolution of the Board of Aldermen of the city of New York whereby the Board determined that the office of Surrogate in Richmond county shall be a separate office and that such officer shall be elected, is a valid and constitutional action. (N. Y. Const. art. VI, § 13; art. III, § 26; County Law, § 231; Greater N. Y. Charter, § 1586; *People ex rel. Weller* v. *Townsend,* 102 N. Y. 430; *Needleman* v. *Voorhis,*

254 N. Y. 399; *Matter of Adler* v. *Voorhis*, 254 N. Y. 375; *Western N. Y. Water Co.* v. *City of Buffalo*, 242 N. Y. 202.)

*Alfred V. Norton* for David S. Rendt, appellant. The terms of the County Judge and Surrogate in the county of Richmond are not coterminous. (*Weller* v. *Townsend*, 102 N. Y. 430.) Every presumption is in favor of the constitutionality of an act of the Legislature. (*Schieffelin* v. *Goldsmith*, 253 N. Y. 243; *People* v. *Gillson*, 109 N. Y. 389.)

*James Burke* and *Frank H. Innes* for Joseph A. La Rocca, respondent. The resolution is invalid because the Legislature alone is vested with the authority to separate the office of County Judge and Surrogate, and to provide for the election of a separate Surrogate in Richmond county. (*Matter of Sweeney*, 12 Misc. Rep. 174; 145 N. Y. 401; *Matter of People* v. *Wurster*, 152 N. Y. 345; *People* v. *Palmer*, 154 N. Y. 133; *O'Reilly* v. *Utah Co.*, 87 Hun, 486; *Wingate* v. *Flynn*, 139 Misc. Rep. 779; *Lewkowicz* v. *Queen Co.*, 207 N. Y. 290; *People* v. *Mosher*, 163 N. Y. 32; *People* v. *Albertson*, 55 N. Y. 50; *People* v. *Comptroller of Brooklyn*, 152 N. Y. 399; *People* v. *Gillson*, 109 N. Y. 389; *Rathbone* v. *Wirth*, 150 N. Y. 459; *Baird* v. *Helfer*, 12 App. Div. 23.) The resolution was beyond the powers of the Board of Aldermen under the provisions of the Constitution relating to home rule and under the provisions of the City Home Rule Law. (*Matter of Spingarn*, 175 App. Div. 806; *McGrath* v. *Grout*, 37 Misc. Rep. 64; 69 App. Div. 314; 171 N. Y. 7; *Saratoga* v. *Saratoga Gas Co.*, 191 N. Y. 138; *Matter of Gilbert*, 70 N. Y. 361; *Schieffelin* v. *Mills*, 241 N. Y. 96; *Schieffelin* v. *Berry*, 217 App. Div. 451; *McAnning* v. *Board of Estimate*, 232 N. Y. 377; *Ledwith* v. *Rosalsky*, 244 N. Y. 406; *Prendergast* v. *Cohalan*, 101 Misc. Rep. 712; 179 App. Div. 883; 226 N. Y. 636;

*Matter of Siracusa*, 125 Misc. Rep. 882; *Rochester* v. *West*, 164 N. Y. 510; *People ex rel. Burly* v. *Howland*, 155 N. Y. 270; *City of New York* v. *Village of Lawrence*, 250 N. Y. 429; *Adler* v. *Deegan*, 251 N. Y. 467.) Unconstitutional statutes cannot be validated by acquiescence or long-continued violations. (*Wendell* v. *Lyon*, 246 N. Y. 115; *Simpson* v. *Kempner*, 154 App. Div. 674; 208 N. Y. 16; *Gardner* v. *Ginther*, 232 App. Div. 301.)

*Charles G. Keutgen* for Thomas F. Cosgrove, respondent. The power to separate the office of Surrogate from that of County Judge has been intrusted by the Constitution exclusively to the Legislature, and cannot be delegated to local legislative bodies. (*Matter of Adler* v. *Voorhis*, 254 N. Y. 375; *Opinion of Attorney-General*, 7 St. Dept. Rep. 509; *Parker* v. *Board of Supervisors*, 106 N. Y. 392; *Kingsley* v. *Bowman*, 33 App. Div. 1; *Prendergast* v. *Cohalan*, 101 Misc. Rep. 712; 179 App. Div. 883; 226 N. Y. 636; *Ledwith* v. *Rosalsky*, 244 N. Y. 406; *Healey* v. *Dudley*, 5 Lans. 115; *Gardner* v. *Ginther*, 232 App. Div. 296.) The time when the power to create a separate Surrogate may be exercised is only at the end of an incumbent's term or on the occurrence of a vacancy. (*People ex rel. Burby* v. *Howland*, 17 App. Div. 165; 155 N. Y. 270; *Warner* v. *People*, 2 Den. 272; *People ex rel. Wogan* v. *Rafferty*, 208 N. Y. 451; *People ex rel. Plancon* v. *Prendergast*, 173 App. Div. 618; *People ex rel. Fowler* v. *Bull*, 46 N. Y. 57.)

*Frederic W. Lahr* and *Ernest T. Lindemann* for Alfred L. Breor, respondent. The resolution is repugnant to section 13 of article VI of the Constitution of the State of New York. (*Matter of Adler* v. *Voorhis*, 254 N. Y. 375; *People ex rel. Devery* v. *Coler*, 173 N. Y. 115.) The resolution cannot be sustained under section 231 of the County Law. (*Gardner* v. *Ginther*, 232 App. Div. 301; *Stanton* v. *Board of Supervisors*, 191 N. Y. 428; *Spring* v. *Wait*, 22 Hun, 442; *People ex rel. Attorney-General* v.

*Kane,* 23 Wend. 414; *Geraty* v. *Reid,* 78 N. Y. 64; *Matter of Church,* 92 N. Y. 1; *Matter of Healey* v. *Dudley,* 5 Lans. 15.)

CARDOZO, Ch. J.   On June 9, 1931, the Board of Aldermen of the City of New York adopted the following resolution: " *Resolved.* That the office of Surrogate in the County of Richmond shall be a separate office and that there shall be elected by the electors of the County of Richmond at the general election to be held in the year Nineteen Hundred and Thirty-one, a separate officer as Surrogate in and for the said County of Richmond for a term of six years, from and including the First day of January, nineteen hundred and Thirty-two.   Successors of such Surrogate shall be  elected  by the electors within said County at the general election to be held in the year at the end of which the term of such Surrogate, or any of his successors, shall expire, or in the event of the resignation or death of the incumbent of such office prior to the expiration of the term thereof, then as provided by law."

The petitioner, challenging the validity of this resolution, has applied for a mandamus commanding the Secretary of State, the Board of Elections of the city of New York, and the chairmen of the party organizations of the county to refrain from performing their respective functions in giving effect to the resolution and in certifying an election pursuant thereto.

An order of mandamus has been granted, and the case is now here upon an appeal by the officers and chairmen whose action is restrained.

The Judiciary Article of the Constitution of the State, as amended to take effect January 1, 1926, provides *inter alia:* " In any county having a population exceeding forty thousand, wherein there is now no separate surrogate, the legislature may provide for the election of a separate officer to be surrogate, whose term of office shall be six years " (Art. VI, § 13).

There was a similar provision in almost the same words in the Judiciary Article of the Constitution of 1894 (Art. VI, § 15); and in the Judiciary Article of the Constitution of 1846 (Art. VI, § 14), both as originally adopted and as amended in 1869.

Section 231 of the County Law (Cons. Laws, ch. 11) is a re-enactment of section 221 of the County Law of 1892, which in turn goes back to statutes enacted by the Legislature in 1871 (Laws of 1871, ch. 859, § 3) and in 1847 (Laws of 1847, ch. 276, § 13).

The statute now in force, which is substantially the same as the earlier ones, provides as follows: " The board of supervisors of any county, except Kings, having a population exceeding forty thousand, may, by resolution at a meeting thereof, determine that the office of surrogate therein shall be a separate office, and provide for the election of such officer therein. The clerk of the board shall immediately deliver the resolution to the county clerk, who shall file the same in his office and, within ten days thereafter, transmit a certified copy thereof to the secretary of state; and thereafter a surrogate shall be elected for such county."

We think this enactment is not deprived of validity by reason of the fact that the Legislature has delegated to the local authorities the duty of determining the measure of the local needs (*People ex rel. Unger* v. *Kennedy,* 207 N. Y. 533).

The locality does not create the court, does not prescribe the powers and functions of a Surrogate. The court is created by the Constitution, which prescribes also the functions of the office and the tenure of the officer. The Legislature, empowered by the Constitution to provide for an election, has said that it will exercise the power thus conferred whenever the governing body of the county shall signify a belief that provision for an election will promote the local interests (*People ex rel. Unger* v. *Kennedy, supra*). The locality does no more than declare its

willingness and desire to take advantage of a privilege upon the terms and in the manner ordained by the established organs of the State.

The validity of the resolution, if otherwise involved in doubt, is made impregnable through the reinforcement of a practical construction of more than eighty years.

During all that time a like statute has been in force with the acquiescence and the tacit approval of the bar, the bench and the executive officers of the State (See opinion of the Attorney-General printed in the reports of the Attorney-General for 1900, p. 265). Forty-five years ago, this court, in passing upon the validity of other provisions of the act of 1871 (Laws of 1871, ch. 859), gave a summary of the provisions whereby an option was conferred upon the local board, and took their validity for granted. " Under these provisions," it was said, " nearly one-half of the counties, elected to avail themselves of the privilege of choosing separate officers as surrogates, and the duties of the offices of county judge and surrogate throughout the state were thereafter distributed among three classes of persons, viz.: those who performed the duties of both county judge and surrogate, those who discharged those of county judge alone, and those who acted as surrogate only." (*People ex rel. Weller* v. *Townsend*, 102 N. Y. 430, 434). Many Surrogates have been elected and have exercised the functions of their office under the title thus conferred (Opinion of Attorney-General, *supra*). Only the clearest demonstration of error would justify a belated pronouncement that the office was non-existent and its incumbent an intruder (*People ex rel. Snyder* v. *Hylan*, 212 N. Y. 236).

The practical construction supplied by the acquiescence of bench and bar and the executive officers of the State does not exhaust the evidence upholding the action of the Legislature. There is to be added to all this a practical construction by the sovereign people. The successive judiciary articles of the Constitution were

adopted, we must presume, with knowledge of a course of legislation and a tenure of office so open and notorious. Instead of an expression of dissent there was confirmation and approval. " The existing Surrogates Courts are continued, and the Surrogates now in office shall hold their offices until the expiration of their respective present terms " (Constitution, art. VI, § 13, Judiciary Article of 1926; Constitution, art. VI, § 15, Judiciary Article of 1894).

" We do not readily overturn the settled practice of the years " (*Story* v. *Craig*, 231 N. Y. 33, 40).

The practice does not cease to be significant because the Legislature has at times acted of its own initiative. No doubt it had the power to do so if it pleased. So also the practice does not cease to be significant because the local authorities are without power to fix the salary to be paid. An office may exist though no compensation is attached to it (*People ex rel. Clark* v. *Stanley*, 66 N. C. 59, 63; *State* v. *Kennon*, 7 Ohio St. 547, 558, 559; Mechem on Public Officers, § 7). Whether a statute covering the subject is now upon the books, we do not attempt to rule. If we assume that there is none, the duty to fix a salary will devolve upon the Legislature convening after the election (Constitution, art. VI, § 13), and presumably will be discharged. " When the surrogate shall be elected as a separate officer, his compensation shall be established by law, and shall be payable out of the county treasury " (Constitution, *supra*). No embarrassment has ensued in the past when new elections were held at the instance of a county. The Legislature has acted at some appropriate time, and has fixed the fitting pay. We must presume that all departments of the government will continue to co-operate in a genuine endeavor to make the Constitution and the statute work.

No conflict is perceived between the provisions of the County Law and those of the Home Rule sections of the Constitution as amended in 1923 (Art. XII, §§ 2, 3, 4).

A Surrogate is not a city officer, but a member of the judicial system of the State (*Matter of Adler* v. *Voorhis*, 254 N. Y. 375, 379).

The Home Rule provisions did not have the effect of repealing automatically existing legislation affecting the property, government or affairs of cities; still less any legislation affecting the interests of the State as well as those of the locality.

Again, no conflict is perceived between the provisions of the County Law and those of article III, section 27, of the Constitution to the effect that " the Legislature shall, by general laws, confer upon the board of supervisors, or other governing elective bodies, of the several counties of the State such further powers of local legislation and administration as the Legislature may, from time to time, deem expedient." The powers confided to the locality, though touching matters of State concern, are local, none the less, in the range of their territorial extension (*Huber* v. *People*, 49 N. Y. 132; *Kerrigan* v. *Force*, 68 N. Y. 381; *Ferguson* v. *Ross*, 126 N. Y. 459, 464; *Economic P. & C. Co.* v. *Buffalo*, 195 N. Y. 286; *Matter of McCabe* v. *Voorhis*, 243 N. Y. 401, 413, 414). Legislation may be local, though the interests affected outrun the bounds of the locality (*Ferguson* v. *Ross*, *supra*; *Adler* v. *Deegan*, 251 N. Y. 467, 489, 491). In thus holding we assume that the delegation of a power so intimately touching the welfare of the State is not to be gathered by implication from words of doubtful meaning (*Whitmore* v. *Mayor*, 67 N. Y. 21). Where the meaning is unequivocal, the grant will be upheld.

The Constitution does not require that the action of the local authorities in providing for the election of a Surrogate shall be postponed until the term of the County Judge in office at the date of the resolution shall have expired by lapse of time. The resolution does not take from the County Judge any office that was his at the time of his election. It does not abridge his term. It

does not oust him from any post of responsibility or honor. To his office of County Judge the Constitution annexed certain duties which were those of a surrogate. In so annexing them it provided that they might at any time be severed by appropriate legislation. The acceptance of the office was the acceptance of the contingency that inhered in its creation.

Other objections to the resolution have been considered, and have been found to be untenable.

Whatever powers formerly resided in the county Boards of Supervisors in the territory included within the city of New York are vested at the present time in the Board of Aldermen (N. Y. Charter, § 1586; Constitution, art. III, § 26).

The question of the justice or wisdom of the proposed separation is not before us. When constitutional power is found to exist, our jurisdiction is exhausted.

The order should be reversed and the petition denied.

CRANE, J. (dissenting). At the general election in 1929, Thomas F. Cosgrove was elected County Judge and Surrogate of Richmond county, for a term of fourteen years. (N. Y. State Const. art VI, § 11.) From the inception of our judicial system the office of County Judge and Surrogate in Richmond county has been filled by one judge performing the duties of County Judge and Surrogate. Shortly after Cosgrove took office the Board of Aldermen of New York city determined to take from him all powers of Surrogate, and thereupon on the 9th day of June, 1931, passed a resolution creating the office of Surrogate and providing for the election of a Surrogate to fill the office at the coming election. The resolution says that the office of the Surrogate of the county of Richmond shall be a separate office and that there shall be elected at the general election in 1931 a separate officer as Surrogate in and for the county of Richmond for the term of six years. Nothing is said about his compensa-

tion, and I take it that the Board of Aldermen is not competent to fix his compensation. No act of the Legislature has created the office of Surrogate of Richmond county, nor provided for an election to such office; consequently, there is no act of the Legislature fixing compensation for any Surrogate of Richmond county. Strange indeed is it to find a Board of Aldermen claiming the power to create a State office, part of the judicial system of the State, without any power to provide compensation.

Section 231-d of the County Law, as added by Laws of 1926, chapter 815, provides that the compensation of the County Judge of Richmond county will be the same as that of the Judge of General Sessions of the city of New York, but no compensation is made for any Surrogate. How much is this new Surrogate to be paid? If the matter rests entirely in the discretion of the Legislature, it must be that the separation or creation of the office also rests solely with the Legislature. So reads the judiciary article of the Constitution of this State, as amended in 1925. By section 12 of article VI the Legislature may, *on application of the Board of Supervisors* in any county having a County Court, provide for the election of a Special County Judge or Special Surrogate not to exceed two in any county. Any such Special County Judge or Surrogate shall be chosen at a general election thereafter to be held.

Section 13 of the same article provides for the continuance of the existing Surrogates' Courts and says: "The Legislature may provide for the election of an additional surrogate in any county having a population of more than one million." Right here let us ask whether the Legislature could delegate to the Board of Aldermen of the city of New York this entire power, that is, to provide for the election of an additional Surrogate.

This section further prescribes: "The county judge shall be and serve as surrogate of his county, except where a separate surrogate has been or shall be elected. In any county having a population exceeding forty thousand,

wherein there is now no separate surrogate, the Legislature may provide for the election of a separate officer to be surrogate, whose term of office shall be six years. When the surrogate shall be elected as a separate officer, his compensation shall be established by law, and shall be payable out of the county treasury.''

Note that all the references to the Legislature in these sections are the same. The Legislature shall provide for the election and the Legislature shall fix the compensation. The two things are linked together. It is as necessary for the Legislature to do the one as the other. We are dealing here with a State judicial office. (*Matter of Prendergast v. Cohalan*, 101 Misc. Rep. 712; affd., 226 N. Y. 636.)

That the Legislature alone had the power to create the office of Surrogate or to separate it from the County Judgeship is evidenced by other provisions of the Constitution. By section 15 of article VI the Legislature may in its discretion authorize the election of one or more additional justices of the City Court in any county within the city of New York. They shall receive the compensation to be fixed by law. No Board of Aldermen here to deal with this increase of city judges and additional burdens upon the taxpayers.

Again referring to section 15, we find that the Legislature may at any time provide that the duties of County Judge and Surrogate in any county be discharged by the same person. The corollary of this must also be true — that the Legislature may provide that the duties of the County Judge and Surrogate be discharged by different persons, not the same person. That the duties and powers of this Surrogate's Court are within the handling solely of the Legislature is emphasized by the provision that the Legislature may confer upon the Supreme Court in any county having a population exceeding 400,000 the powers and jurisdiction of surrogates.

Section 14 of article VI gives to the Legislature the

discretion to authorize the election of one or more additional judges of the Court of General Sessions.

The phraseology is the same in sections 12, 13, 14 and 15. " The Legislature may provide for the election " or " authorize the election " of Special County Judge, of Special Surrogate, of an additional Surrogate, of a separate Surrogate, of an additional General Sessions Judge, of an additional City Court Judge.

These powers cannot be delegated and passed over by the Legislature to the Board of Aldermen of the city of New York; they rest entirely with the good judgment and the discretion of the Legislature. The separation of the duties of the Surrogate from those of County Judge is the creation of a new office. The word " separate " may sound harmless, but it is here synonymous with " create." The salary of the County Judge and all the expenses are not cut in half; the expenses are more than doubled. The County Judge cannot receive less pay, and no power can reduce his salary during his term of office. The creation of a separate Surrogate means an additional salary, additional clerks, staff and office, so that the action of the Board of Aldermen by its resolution was the same as creating a separate and distinct judicial office. No logomachy can hide the facts.

So far as section 231 of the County Law, being section 221 of the original County Law of 1892, attempts to vest the Board of Aldermen, successor to the Board of Supervisors, with the power to create this office, it is unconstitutional. The Legislature has no power to delegate this authority, especially since the revision of the Judiciary Article in 1925, which is to be taken as complete and self-sufficient when dealing with the courts. (*Matter of Adler* v. *Voorhis*, 254 N. Y. 375.) This section says that the Board of Supervisors of any county, except Kings, having a population exceeding 40,000, may by a resolution at a meeting thereof determine that the office of Surrogate therein shall be a separate office and provide for the election of such officer therein.

So far as any counties of the State have acted under this County Law, the office is protected by those provisions of our present Constitution which continue existing Surrogates " now " in office. But many, if not most, of the counties of the State have been doubtful of the constitutionality of this law, and have not relied upon it. Thus, Suffolk county, by chapter 330 of the Laws of 1879, procured a separate Surrogate. The act is entitled, "An Act to provide for the election of a surrogate, separate from the county judge of the county of Suffolk, and to fix the salary of said surrogate, and also the salary of the county judge of said county hereafter to be elected." For Steuben county, see chapter 309 of the Laws of 1883; Cattaraugus, chapter 236 of the Laws of 1857; Clinton, chapter 354 of the Laws of 1881; Essex, chapter 461 of the Laws of 1857; repealed, chapter 4 of the Laws of 1860; Otsego and Saratoga, chapter 779 of the Laws of 1871; Rensselaer, chapter 888 of the Laws of 1872; St. Lawrence, chapter 244 of the Laws of 1847. Time does not permit a completion of the list. The fact that so many counties have sought special legislation indicates that the validity of the County Law was seriously doubted.

Whatever doubts, however, there may have been about the phraseology of previous Constitutions and of the County Law, there can be no doubt since the adoption of the revised Judiciary Article of 1925, which gave to the Legislature alone power and the discretion to separate or create the office of Surrogate in any county. That these powers cannot be delegated see Cooley, Constitutional Limitations (7th ed.), p. 163, and cases; *People ex rel. Unger* v. *Kennedy* (207 N. Y. 533); *Stanton* v. *Board of Supervisors* (191 N. Y. 428); *Village of Saratoga Springs* v. *Saratoga Gas, E. L. & P. Co.* (191 N. Y. 123).

There is a marked distinction between a completed law to be adopted or not according to the vote of a Board of Supervisors or the people of the county and the making of that law by the Board. Creating a Surrogate's

Court with term and salary affixed to be approved or adopted by local authority is different from passing on to the local authority the discretion and power to create the office, fix time of election and leave the compensation to be fixed after election. Whoever heard of an election to an office without a salary, compensation to be fixed after election — dependent, perhaps, upon the candidate elected? Such methods strike at the roots of democratic government. What kind of men will run for Surrogate of Richmond county next fall, where no compensation is attached to the office; or the hope of any, and the amount is dependent upon the will of next year's Legislature? The Constitution contemplates, as the Suffolk county act provides, that the office and salary shall be established by the Legislature previous to election.

The order appealed from should be affirmed.

POUND, LEHMAN, KELLOGG, O'BRIEN and HUBBS, JJ., concur with CARDOZO, Ch. J.; CRANE, J., dissents in opinion.

Order reversed, etc.