Eugenio Montes Viera, Petitioner and Appellant, *v*. Manuel V. Domenech, Treasurer of Puerto Rico, et al., Respondents and Appellees.

No. 6161. Argued January 17, 1935.—Decided March 19, 1935.

*Diego O. Marrero* for appellant. *Benjamin J. Horton, Attorney General,* and *T. Torres Pérez, Assistant Attorney General,* for appellees.

Mr. Chief Justice Del Toro delivered the opinion of the court.

This is a case of mandamus. The petition was finally denied by the district court, and the petitioner appealed to this court.

In the petition it is alleged, in brief, that the petitioner was on July 1, 1917, and thereafter continued to be and is still a member of the Classified Civil Service of Puerto Rico; that on April 19, 1928, by virtue of the provisions of Joint Resolution No. 13, approved on that same date, he was appointed by the Commissioner of the Interior clerk in charge of the accounts and inspection of all gasoline imported, manufactured, or produced in Puerto Rico to work in the Bureau of Excise Taxes of the Department of Finance, at an annual salary of $2,000; that the Commissioner of the Interior has at no time separated, discharged, or suspended the petitioner from the office which he was occupying up to August 22, 1930, when he was notified verbally by the Chief of the Bureau of Excise Taxes, in the name of the respondent Treasurer, that "since the petitioner's tenure of office had ceased by legislative action, he had nothing to do in the Department, and consequently he could leave the office"; that the action of the respondent Treasurer was based on the fact that "by legislative action carried out by Act No. 12, approved on April 21, 1930, the office of the petitioner had been abolished because the asphalting funds, from which were paid the compensation to which the petitioner was entitled, had been cov-

ered into the general funds of the Treasury''; that his office was not abolished or suspended by legislative action; that thereafter, on April 24, 1931, Act No. 40 was approved, which provided that the salary of the office which the petitioner had been occupying should be paid from the proceeds of the gasoline tax, and thus the obstacle which the respondent Treasurer set up to prevent the petitioner from continuing in the discharge of his office, ceased to exist from the date of the approval of that act; that immediately after the approval of Act No. 40 of 1931, the petitioner asked the Commissioner of the Interior to write to the Treasurer ''in order that the latter might proceed to give him possession of his office and permit him to discharge the duties thereof, to which the Commissioner of the Interior replied that the respondent Treasurer of Puerto Rico, Manuel V. Domenech, had informed him that he did not need more personnel in connection with Act No. 40 of 1931''; that the petitioner has insisted with the Treasurer that he give him possession of his office and the Treasurer has continued to refuse to do so without any legal cause whatever, thus ignoring a clear duty which the law imposes upon him; that since July 1, 1931, he has failed to discharge his office solely on account of the arbitrary opposition of the respondent Treasurer, being thus deprived of his salary; that the respondent Commissioner of the Interior is the officer who has the ministerial duty of sending to the Auditor the proper payroll report in order for the petitioner to receive his salary from July 1, 1931, and that the petitioner has no other speedy, adequate, and effective remedy than the extraordinary remedy of mandamus which he invokes.

The petition, which was filed on May 23, 1932, concludes by praying: (1) that the respondent Treasurer be ordered to give immediate possession to the petitioner of his office of clerk in charge of accounts and inspection of all gasoline which is imported, manufactured, or sold in Puerto Rico, and

to permit him to discharge the functions thereof; and (2) that it be ordered that the other respondent, the Commissioner of the Interior, proceed to issue the proper payroll report covering the salaries of the petitioner from July 1, 1931, up to the date on which he shall be given possession of his office.

Upon the filing of the petition, the court issued an order to show cause, and on the day set, the respondents appeared and opposed the issuance of the writ, on the following grounds: "(1) Because there is another action pending between the same parties and for the same cause. (2) Because in the petition for mandamus presented there is identity of parties plaintiff and defendant, and the action brought is the same in substance as the case of mandamus between the same parties, which was decided by this District Court on March 26, 1931, denying the petition for mandamus, an appeal being taken by the petitioner to the Supreme Court where recently the petitioner has filed the transcript of record and brief, on appeal. (3) Because, as the petitioner has resorted to the remedy of appeal from the judgment of March 26, 1931, the filing of a new petition for mandamus, in which the facts are the same, before the same court which rendered the judgment appealed from, would be equivalent to a second review of such judgment by the same court that decided the prior mandamus, without withdrawal by the petitioner of the appeal already taken. (4) Because the facts of the prior mandamus proceeding and those of the instant case are the same, since they could not have been changed, petitioner being given no new right whatever by the mere fact that Act No. 40 was approved on April 24, 1931, which is referred to in the petition, after appeal had been taken. (5) Because at the present time the office which the petitioner seeks to recover is not filled by any person whatsoever. (6) Because, this being a new petition for mandamus, the respondents, in accordance with the existing law, ought to have been again

required to perform by the petitioner, a step which does not appear to have been taken in any form by the petitioner subsequent to the appeal from said judgment. (7) Because the primary purpose of Act No. 40 is to levy a tax of seven cents on every gallon of gasoline imported or sold in Puerto Rico, and the proviso of section 2 with respect to the clerk in charge of accounts and inspector of gasoline confers no new right on the petitioner but is merely a declaration that if there should be some person discharging the duties as such clerk, his salary should continue to be paid from the proceeds of this tax, and not that that position must necessarily be filled. (8) Because the petitioner, in accordance with Act No. 40 of March 4, 1931, in force since July 1, 1931, has abandoned the right which he alleges to have by permitting the long period of time of ten months to elapse without instituting the action which he has lately brought.''

The court heard both parties, and, as we have already stated, finally denied the petition. The judgment, which was rendered on July 14, 1932, reads as follows:

"Joint Resolution No. 13 (Laws of 1928, page 730), which the petitioner invokes, has for its purpose, according to its title, to authorize the Treasurer and the Auditor of Puerto Rico to pay the salary of the employee in charge of the accounts and inspection of all gasoline imported, manufactured, or produced in Puerto Rico, out of the 'Funds for the Asphalting of the Roads of Puerto Rico,' created by Act No. 8, approved May 11, 1927, and for other purposes.' This law, then, does not create any office, but it authorizes the payment of the salary of an employee from a specified fund. Act No. 8 of 1927 (Session Laws, page 420) amends the title of Act No. 52 of 1925 and its sections 1 and 3, but it does not create any employment or office. Act No. 12 of 1930 (Session Laws, page 158) amends the title and sections 1 and 3 of Act No. 8 of 1927, but it does not create any office or fix any salary either. Finally, Act No. 40 of 1931 (Session Laws of 1931, page 360) expressly repeals Act No. 12 of 1930, imposes a tax upon gasoline, and provides 'that the salary of the clerk in charge of accounts and inspection of gasoline, created by Joint Resolution No. 13, approved April 19, 1928, which salary has been heretofore paid from the Special Fund for the as-

phalting of the roads of Puerto Rico, shall hereafter be paid from the proceeds of this tax.' As may be seen, this law does not create any ministerial, regulated, or imperative duty to be performed by the respondent. Plaintiff's theory seems to be that once he was appointed to the office, he always had a right thereto, and that the Treasurer was bound to reinstate him as an imperative or executive duty. In support of this, he invokes the doctrine that a salary is an incidental derivative of the office, and that the latter may exist without compensation being provided therefor. That doctrine in no way affects the controversy raised in this proceeding. Mandamus is a judicial proceeding aimed at enforcing clear legal rights and compelling performance of executive duties which may be imposed by law as part of the functions or duties of the officer to whom the writ is directed. But in none of the laws which we have examined is there imposed upon the Treasurer the executive duty of reinstating the petitioner in his office, which he left, not by any act of the respondent (as is stated in the petition), but because the law which authorized the payment of his salary was amended, and what is more, the law itself was completely repealed by section 3 of Act No. 12 of 1930. It is true that Act No. 40 of 1931 expressly repealed Act No. 12 of 1920, but in this case application lies of the principle of statutory construction set forth in section 6 of the Civil Code, to the effect that the repeal of a repealing act does not revive the act before repealed. Having this in mind, the lawmaker inserted the proviso which appears in section 2 of Act No. 40 of 1931, but such proviso only had the effect of reviving the provisions which authorized the payment of the salary of the employee from the special fund for asphalting, and is rather an academic provision, since the total proceeds collected by virtue of the said Act No. 40, from July 1, 1931 to June 30, 1932, were to be covered into the general funds of the Treasury of Puerto Rico, being considered as an internal revenue tax. There being, then, no· special fund, the Treasurer has full power by law to collect the gasoline tax, as in the case of any other tax, and to use therefor the employees of his department in charge of the collection of internal revenue. The provision that the payment of salary of the clerk in charge of the tax be made from a certain fund, is mandatory for the Treasurer if there is such an employee, but it does not establish any obligation or imperative duty to be performed as regards the plaintiff, who was not discharging the duties of any office when the law was approved.

"And since the defense raised is equivalent to one that the petition does not state facts sufficient to constitute a cause of action, and such petition is not susceptible to amendment, the issuance of the writ of mandamus prayed for is denied."

Feeling aggrieved by that decision, the petitioner appealed, and filed the transcript of the record on September 14, 1932. He then asked for extensions of time for his brief, filing the same at last on June 3, 1933. The hearing of the appeal was set for April 19, 1934. On April 10, both parties stipulated for a continuance of the hearing until new setting, which was made for January 17, 1935, on which date the case was definitely submitted to this court.

The appellant in his brief assigns six errors, committed in his judgment by the trial court, in holding: (1) That by Joint Resolution No. 13 of 1928, no office whatever was created; (2) that Act No. 12 of 1930 repealed Joint Resolution No. 13 of 1928; (3) that section 6 of the Civil Code is applicable to this case; (4) that section 2 of Act No. 40 of 1931, reviving the salary for the office, is academic; (5) that the Treasurer was not bound to give possession of the office to the petitioner; and (6) that the petition does not state facts sufficient to constitute a cause of action, denying the same upon that ground.

█ There is no doubt that the decision in this case could be rendered with a greater degree of certainty if it had gone further, giving the defendants an opportunity to prove their defenses of abandonment of office on the part of the petitioner and that the case had already been decided by a judgment rendered by the district court on March 26, 1931. Nevertheless, we think that the judgment appealed from must be affirmed since the facts alleged do not show, with the clarity required by the law and the cases on mandamus, the right of the petition.

█ It may be conceded that by Joint Resolution No. 13 of 1928 (Session Laws, p. 730), the office to which the petitioner was appointed on April 19, 1928, was created, but not

that the creation thereof was in any way independent or permanent. An examination of the title and the recitals (*por cuantos*) of the resolution is sufficient to show that its existence depends upon that of Act No. 8 of 1927 (Session Laws, page 420). It seems advisable to quote these, as follows:

"JOINT RESOLUTION.—Authorizing the Treasurer and the Auditor of Porto Rico to pay the salary of the employee in charge of the accounts and inspection of all gasoline imported, manufactured, or produced in Porto Rico, out of the 'Funds for the Asphalting of the Roads of Porto Rico,' created by Act No. 8, approved May 11, 1927, and for other purposes.

"WHEREAS, Act No. 8, approved May 11, 1927, levies a tax of four (4) cents on each gallon of gasoline sold or consumed or otherwise disposed of for consumption in Porto Rico, and appropriated the proceeds of such tax for the asphalting of insular roads;

"WHEREAS, to collect this tax it is necessary to pay an employee in the office of the Treasurer of Porto Rico, who shall devote himself solely and exclusively to keeping the accounts of, and to inspecting, all gasoline imported, manufactured, or produced in Porto Rico."

The authorization for the payment of the salary was in the following terms: "Section 2.—The Treasurer and the Auditor of Puerto Rico are authorized *to pay out of the 'Fund for the Asphalting* of the Roads of Porto Rico,' . . ." (Italics ours.) And thus, when Act No. 12 of 1930 (Session Laws, page 160), was approved, amending Act No. 8 of 1927 in such a way that the fund for asphalting disappeared, all funds collected by virtue of the gasoline tax during the year 1930–31 being covered *into the general funds of the Treasury of Puerto Rico* and after July 1, 1931, *to be applied to the construction and conservation of insular roads and bridges* (italics ours), there was not only no appropriation for the office, but there was no justification for its existence. Act No. 12 of 1930, contains a repealing clause which provides: "Section 3.—All laws or parts of laws in conflict herewith are hereby repealed."

The conclusion we have reached appears even more clearly when one considers the fact that the asphalting fund was a

special fund created by the second section of Act No. 52 of 1925 (Session Laws, page 297), with which Act No. 8 of 1927 was related, in the following terms:

"Section 2.—The money collected by the Treasurer of Porto Rico under the tax created by this Act, shall be covered into a special fund to be known as 'Fund for the Asphalting of the Roads of Porto Rico,' and shall be applied solely and exclusively to the asphalting of insular roads."

The Joint Resolution of 1928 upon which petitioner bases his right fell together with the special fund for asphalting which gave rise to it. The proceeds of the gasoline tax having been covered into the general funds, the attitude taken by the Treasurer was correct. The work in connection therewith could and ought to have been carried on by the regular employees of his department.

Such being the facts of the case, the situation presented thereby is different from that in the cases cited by the appellant in his brief, which hold that a salary is a mere incident of the office, that it constitutes no part thereof, and is not indispensable to its existence. Here there was more than a mere failure of appropriation to cover the salary of a permanent office.

What effect has the proviso of section 2 of Act No. 40 of 1931 (Session Laws, page 360)?

That law stands alone. It has no such relation as do the laws of 1925, 1927, and 1930 amending each other. It is related, of course, by reason of the subject matter. It commences by levying, as though it were for the first time, a tax upon gasoline, which is fixed at seven cents per gallon, and then provides in its section 2:

"The total proceeds of collections made by virtue of this Act from July 1, 1931 to June 30, 1932 shall be covered into the general funds of the Treasury of Porto Rico, and after July 1, 1932 the total proceeds collected by virtue of this tax, shall be devoted, with the approval of the Economy Commission of the Legislature and with the approval of the Governor of Porto Rico, to the develop-

ment and carrying out of the general plan of municipal roads prepared by the Department of the Interior and approved by the Legislature of Porto Rico; \* \* \*.''

Then follow two provisos, the last of which reads thus:

''That the salary of the clerk in charge of the accounts and inspection of gasoline, created by Joint Resolution No. 13 approved April 19, 1928, which salary has been heretofore paid from the Special Fund for the asphalting of the roads of Porto Rico, shall hereafter be paid from the proceeds of this tax.''

It is clear that this brings a new element into the solution of the problem. It is true that it throws a favorable light upon the right invoked by the petitioner, but after due consideration of all the circumstances, we think that, as the trial court has said, it had only the effect of reviving the authorization for the payment of the salary, and not the right of the petitioner to the office. If the petitioner had been discharging the office when the proviso of Act No. 40 of 1931 became effective, his salary could have been paid by the Treasurer, but since he was not discharging it, the provision is in fact academic as to him, unless he should receive a new appointment. And this he did not request, nor has it been prayed for in the suit. He goes upon the ground that his original appointment continued in force. And as we have already seen, this was not so.

■ Moreover, although, as we have said, some of the essential grounds set up by the defendants in opposition to the issuance of the writ cannot be taken into consideration since the case did not go to trial, it appears from the petition itself that the petitioner resorted to the courts too late for his right to the extraordinary writ of mandamus sought to be recognized. If there was no prior suit at all, then it appears that he permitted about two years to elapse, from August 1930, on which he ceased the discharge of his office, to May 23, 1932, when he filed his petition, and if the time is reckoned from the date of the approval of Act No. 40 of 1931,

that is, April 24, 1931, or the date on which it became effective, July 1, 1931, more than one year would have elapsed in the first case, and more than ten months in the second.

The judgment appealed from must be affirmed.

Mr. Justice Córdova Dávila, dissenting.

In the majority opinion it is said that "it may be admitted that by Joint Resolution No. 13 of 1928, Laws of 1928, page 730, the office to which the petitioner was appointed on April 19, 1928, was created, but not that the creation thereof was in any way independent or permanent." As to the creation and existence of the office, there can be no doubt. For the creation of an office it is not necessary that the Legislature should state its intention in express words. The use of any language that manifestly shows the legislative intent is sufficient to consider the office as created.

Joint Resolution No. 13, approved in 1928, states the necessity of paying an employee in the Treasury to devote himself solely and exclusively to the accounting and to the inspection of all the gasoline, imported, manufactured, or produced in Puerto Rico, and in its first section authorizes the Commissioner of the Interior to appoint an employee to be paid from this fund, to carry out the work mentioned. In its second section said resolution authorizes the Treasurer and Auditor of Puerto Rico to pay from the fund for asphalting the insular roads $2,000 annually to the employee to be appointed by the Commissioner of the Interior to take charge of the accounts and inspection of all gasoline imported, manufactured or sold for consumption, or otherwise disposed of, in Puerto Rico. The language of the statute is sufficient to show the creation of the office in question. The cases are clear upon this point. In the case of *Ryan v. Riley,* 65 Cal. App. 181, 223 Pac. 1027, the court, in examining a provision which was not as concise or definite as the one we are now discussing, expressed itself as follows:

"Does the first subdivision of section 30 of the Motor Vehicle Act create the office of traffic officer? It reads as follows: 'The chief of the division of motor vehicles is hereby authorized to appoint all necessary state inspectors at large and in addition thereto a sufficient number of state inspectors and traffic officers to enforce the provisions of this act in each of the counties of the state,' etc.

"Upon first impression it might appear questionable as to whether any such office was in fact created, but upon further consideration and investigation it seems clear that the language used conveys the intent as well as embodies the intent of the legislature to call into existence such an office notwithstanding the fact that the functions of that office are to be gathered only from the general terms of the section, to wit, to enforce the provisions of the Motor Vehicle Act,, and that the number of persons exercising the functions of such office or to exercise the same is not specifically set forth.

"  *        *        *        *        *        *        *

"No particular language appears to be necessary for the creation of an office. It is sufficient if the intent of the legislature is so manifested by the language used. (*Childs* v. *State,* 4 Okl. Cr. 474 [33 L.R.A. (N. S.) 563, 113 Pac. 545].) That the language used in the first subdivision of section 30 of the Motor Vehicle Act sufficiently manifests the intent of the legislature to create the office of traffic officer is supported by the case of *Scott* v. *Boyle,* 164 Cal. 321 [128 Pac. 941], where an act of the legislature approved March 18, 1911, [Stats. 1911, p. 383], was held sufficient to create the position of sealer of weights and measures. Section 4 of that act reads as follows: 'The respective counties, incorporated cities, incorporated towns and incorporated cities and counties of the state are hereby authorized to appoint sealers of weights and measures.' Further illustrations might be given but we deem the foregoing sufficient."

We cannot accept the conclusion announced in the majority opinion that the existence of that office was made to depend upon Act No. 8 of 1927 (Session Laws, page 420). The fund for asphalting the insular roads was created by section 2 of Act No. 52 of 1925, "to levy a tax of two (2) cents on each gallon of gasoline," etc. This section provides that the money collected by the Treasurer of Puerto Rico on account of the tax levied by the act, shall be covered into a special fund to be known as "Fund for the Asphalting of the

Roads of Puerto Rico," and to be applied solely and exclusively to the asphalting of insular roads. This law was amended by Act No. 8 of 1927, which increased the tax on gasoline to 4 cents a gallon. In 1928, three years after the creation of the special fund, an office was created to carry on the accounting and the inspection of all gasoline imported, manufactured or produced in Puerto Rico. If a careful examination of Joint Resolution No. 13 is made, it will be seen that the existence of the gasoline fund is not what motivated the creation of the office, but the necessity of assigning an employee in the Insular Treasury to take charge of the gasoline tax and to devote himself solely and exclusively to the accounts and to the inspection of all gasoline imported, manufactured, or produced in Puerto Rico. It is evident that this need had nothing to do with the disposition which might be made of the money collected. For the purposes of accounting, collection, and inspection, it is the same whether the money goes into a special fund or whether it is mingled with the general funds of the Insular Treasury. The necessity for this work does not disappear because of the fact that the proceeds of the tax are not destined to form part of a special fund. The covering of the tax into the ordinary funds of the treasury cannot have the effect of abolishing the office. It was in 1930 that the gasoline tax came to form part of the general funds of the Treasury by virtue of Act No. 12, amending Act No. 8, approved on May 11, 1927, which amended in turn Act No. 52 of 1925. According to that act, "'the total proceeds collected by virtue of this Act from July 1, 1930, to June 30, 1931, shall be covered into the general funds of the Treasury of Porto Rico, and after July 1, 1931, the total proceeds collected shall be placed at the disposal of the Commissioner of the Interior to be used by him in the construction, repair and maintenance of insular roads and bridges, . . . *Provided*, That out of the total amount of this tax thirty thousand (30,000) dollars shall be covered annu-

ally, from and after the fiscal year 1930–31, into the 'Insular Police Pension Fund' etc.''

As may be seen, the gasoline tax continues and the total proceeds collected continue to be at the disposal of the Commissioner of the Interior, to be used by him in the construction, repair, and maintenance of insular roads and bridges. The act just mentioned says nothing about the office created for the accounting and inspection of gasoline, but in 1931 the Legislature passed Act No. 40, increasing the gasoline tax to seven cents per gallon, repealing Act No. 12, approved on April 21, 1930, and providing that the salary of the employee in charge of the accounting and inspection of gasoline, created by Joint Resolution No. 13, approved on April 19, 1928, should continue to be paid from the proceeds of this tax.

This last enactment brings out with complete clarity the intention of the Legislature with respect to the creation of the office referred to and its continuation. The Legislature speaks of the office created by the Joint Resolution approved in 1928, and provides that the employee discharging such office shall continue to be paid from the proceeds of the gasoline tax. A study of this legislation as a whole from its inception shows that this office has clearly never been abolished, if we are to give any effect to the letter of the law and the intent of the Legislature. It is a case of statutes *in pari materia,* which ought to be interpreted together. In the case of *U. S.* v. *Freeman,* 3 How. 562, 564, 11 L. ed. 727, the Supreme Court of the United States said:

"The correct rule for interpretation is, that if divers statutes relate to the same thing, they ought all to be taken into consideration in construing any one of them, and it is an established rule of law, that all acts *in pari materia* are to be taken together, as if they were one law. Doug., 30; 2 T. R., 387, 586; 4 Mau. & Sel., 210. If a thing contained in a subsequent statute be within the reason of a former statute, it shall be taken to be within the meaning of that statute; Ld. Raym., 1028; and if it can be gathered from a subsequent statute *in pari materia,* what meaning the legisla-

ture attached to the words of a former statute, they will amount to a legislative declaration of its meaning, and will govern the construction of the first statute. *Morris* v. *Mellin*, 6 Barn. & Co., 454; 7 Id., 99. Wherever any words of a statute are doubtful or obscure, the intention of the legislature is to be resorted to, in order to find the meaning of the words. *Wimbish* v. *Tailbois*, Plowd., 57. A thing which is within the intention of the makers of the statute, is as much within the statute, as if it were within the letter. *Zouch* v. *Stowell*, Plowd., 366. These citations are but different illustrations of the rule, that the meaning of the legislature may be extended beyond the precise words used in the law, from the reason or motive upon which the legislature proceeded, from the end in view, or the purpose which was designed—the limitation of the rule being, that to extend the meaning to any case not included in the words, the case must be shown to come within the same reason upon which the lawmaker proceeded, and not only within a like reason. This court has repeatedly, in effect, acted upon the rule, and there may be found, in the reports of its decisions, cases under it, like the cases which have been cited from the reports of the English courts. In 4 Dall., 14, 'The intention of the legislature, when discovered, must prevail, any rule of construction declared by previous acts to the contrary notwithstanding.' "

For us it is clear that the office has not been abolished by the fact that the proceeds of the gasoline tax has been covered into the general funds of the Insular Treasury. Implied repeals are not favored. To abolish an office the intention to abolish it must be clear and manifest. 46 C. J. par. 30, p. 935.

The Legislature could inadvertently have failed to state expressly that the salary of the employee in charge of accounts and the inspection of gasoline should be paid as theretofore from the proceeds of the tax, which continued to be collected although without being covered into a special fund. The omission was cured the following year, that is, at the first opportunity that the Legislative Assembly had to do so. The 1931 Act leaves no doubt upon this point. Moreover, an office may exist even though no compensation has been appropriated for it. *La Rocca* v. *Flynn*, 177 N. E. 290. The

salary is a mere incident to the office, not constituting a part thereof and not being indispensable to its existence. *Childs v. State,* 4 Okla. Cr. 474, 113 Pac. 545; 22 R.C.L., par. 217, p. 525, 526. The Legislature, in providing in 1931 that the office created by Joint Resolution No. 13, approved in 1928, shall continue to be paid from the proceeds of the gasoline tax, acted upon the assumption that such office had not been abolished. The appropriation is specific as to the purpose as well as to the amount. The language of the statute clearly shows that the omission was accidental and unintentional, and that it was incurred inadvertently or through oversight.

In the case of *Campbell* v. *Schmidt,* 219 N.Y.S. 26, there was involved a petition for mandamus to reinstate the petitioner in the office of headkeeper of the penitentiary. It was said that such office had been abolished by the failure to provide in the budget an item to cover the salary of the petitioner's office. From the evidence it did not appear that any resolution had been adopted to abolish such office. The court, in deciding the question, said:

"It is established upon this application by the proceedings of the board of supervisors that no resolution or act of such body was adopted or taken formally abolishing the petitioner's office of head keeper of the penitentiary; that the finance committee of the board of supervisors did not report that such position be abolished; that the board of supervisors, in its budget for the year 1926, omitted providing for petitioner's salary and made no mention of petitioner's position of head keeper of the penitentiary. Such facts are conceded by the respondent. The sole single question presented for determination is:

"Does the budget for the year 1926, showing what positions are provided for, failing to specifically mention the position of head keeper of the penitentiary, and failing and omitting to provide a salary therefor, in and of itself, by such failure, abolish such position?

"Counsel have been unable to cite any authority bearing on this question. It has been said that to abolish an office the intention of the competent authority to abolish such office must be clear. (29

Cyc. 1368). The mere failure to include the office in the budget does not seem to be a clear expression of an intent to abolish the office. It does not necessarily follow that such failure to include the office in the budget was intentional, it may have been accidental without intent. To say that the mere failure to provide for the payment of the salary of a public officer in and of itself abolishes the office seems devoid of reason and logic; it certainly is not a clear expression of an intent to abolish the office.''

We repeat that, even upon the hypothesis that there could have been any doubt as to the existence and continuance of the office which the petitioner had been discharging since it was created, this doubt ought to have been completely set at rest by the latest act of the Legislature which provides that ''*the salary of the clerk in charge of the accounts and inspection of gasoline, created by Joint Resolution No. 13, approved April 19, 1928, which salary has been heretofore paid from the Special Fund for the asphalting of the roads of Puerto Rico, shall hereafter be paid from the proceeds of this tax.*''

We are of the opinion that this case ought to have been remanded to the court below for further proceedings, in order that the respondents might have had an opportunity to introduce evidence as to the defense of laches and *litispendencia.*